IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| M.H., and C.H.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, TRUE VALUE and the TRUE VALUE COMPANY MEDICAL PROGRAM,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER DENYING MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>No. 2:22-cv-00307-AMA-DAO<br><br>District Judge Ann Marie McIff Allen<br>Magistrate Judge Daphne A. Oberg |

Before the Court is Plaintiffs' Motion to Enforce Settlement Agreement.[1] For the reasons below, the Court will deny Plaintiffs' Motion.

## **BACKGROUND**

On May 28, 2024, Plaintiffs filed a Notice of Settlement informing the Court that the parties had reached a confidential settlement agreement.[2] However, on July 25, 2024, Plaintiffs filed a Notice of Withdrawal from Settlement, representing that Mr. Sullivan, counsel for Defendants, never sent the promised settlement agreement for Plaintiffs to sign despite multiple reminders to do so.[3] The Court held a status conference to address the issues related to the

---

[1] ECF No. 57, filed March 17, 2025.
[2] ECF No. 38.
[3] ECF No. 39.

settlement on August 14, 2024,[4] after which Defendants filed a Motion to Enforce Settlement Agreement.[5] Plaintiffs opposed the motion,[6] and Defendants' Reply was filed on October 16, 2024.[7]

On January 17, 2025, the Court held a hearing on Defendants' Motion.[8] At that hearing, the Parties reached a resolution to resolve the case through a second proposed settlement agreement that tracked with the terms of the first proposed settlement agreement.[9] On January 29, 2025, Mr. Sullivan sent Plaintiffs' counsel, Mr. King, a written document in accordance with the resolution reached at the January 17, 2025 hearing.[10] On February 4, 2025, Mr. King returned the written document to Mr. Sullivan with signatures from Plaintiffs.[11]

The text of the document provides that "[w]ithin 30 days of the date the Plaintiffs provide a complete, fully-executed copy of the Agreement with their signatures to Defendants, a check will be issued by the Defendants" in the amount of the Settlement Payment.[12] In exchange for the Settlement Payment, Plaintiffs agreed to dismiss the action and release their claims against Defendants.[13] The text also provides that "Defendants" refers to United Healthcare Insurance Company, United Behavioral Health, True Value Company, LLC, and True Value Company Medical Program collectively.[14]

---

[4] ECF No. 43.
[5] ECF No. 47.
[6] ECF No. 49.
[7] ECF No. 50.
[8] ECF No. 52.
[9] *Id.*; ECF No. 57 at 3; ECF No. 62 at 6.
[10] ECF No. 65, Ex. 1 at 5.
[11] *Id.* at 4.
[12] ECF No. 67 ¶ 2.
[13] *Id.* ¶¶ 3–4.
[14] *Id.* at 1.

Defendants refused to sign the document.[15] On February 27, 2025, Defendants filed a Notice of Filing Bankruptcy informing the Court that Defendant True Value had filed a petition for Chapter 11 bankruptcy on October 14, 2024.[16] This petition impacts the True Value Company Medical Program, as it is a self-funded benefit plan with benefits paid directly out of True Value's general assets.[17] While the bankruptcy petition was filed months before the January 17, 2025 hearing before this Court, Mr. Sullivan claims that he first learned of the bankruptcy proceedings, which are currently ongoing,[18] on January 30, 2025.[19] Subsequently, Defendants United Healthcare Insurance Company and United Behavioral Health ("United Defendants") maintained that they were not responsible for paying the settlement consideration.[20]

On March 17, 2025, Plaintiffs filed the instant Motion to Enforce Settlement Agreement, asking the Court to order the United Defendants to pay the settlement payment without regard to Defendant True Value's bankruptcy.[21] Defendants filed their Opposition on April 14, 2025.[22] Plaintiffs' Reply was filed on April 28, 2025.[23]

---

[15] *See* ECF No. 67 at 8.
[16] ECF No. 54. The Court takes judicial notice of the bankruptcy proceedings, *In re True Value Co., LLC*, No. 24-12337-KBO (Bankr. Del.). *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts . . . may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").
[17] ECF No. 63, Ex. A at TV-HART 000146. Indeed, the bankruptcy court ordered the Self-Insured Medical Plan terminated as of 11:59 p.m. on June 30, 2025. *In re True Value Co., LLC*, No. 24-12337-KBO, ECF No. 1279 at 2.
[18] *See In re True Value Co., LLC*, No. 24-12337-KBO.
[19] ECF No. 63 ¶ 6.
[20] ECF No. 56.
[21] ECF No. 57.
[22] ECF No. 62; *see also* ECF Nos. 63–64.
[23] ECF No. 65.

## DISCUSSION

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while litigation is pending before it."[24] "Issues involving the formation, construction, and enforceability of a settlement agreement are resolved by applying state contract law."[25] Here, however, the issues are complicated by True Value's Chapter 11 bankruptcy petition and the automatic stay imposed by 11 U.S.C. § 362(a).[26]

"Section 362(a) imposes an automatic stay when a debtor files a bankruptcy petition."[27] This stay prevents, in relevant part, "the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor . . . or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]."[28] In other words, the automatic stay "prevents creditors from taking further action against [the debtor] except through the bankruptcy court."[29] The purpose of the automatic stay is "to allow the debtor to attempt to repay his debts or reorganize his financial affairs by virtue of a respite from demanding creditors,"[30] as well as to protect "creditors by prohibiting the dismembering of the bankruptcy estate."[31] "[T]he automatic stay maintains the status quo so as to ensure that there is an orderly distribution of estate assets."[32] Significantly, "[a]ny actions taken in violation of the automatic

---

[24] *U.S. v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).
[25] *U.S. v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).
[26] While 11 U.S.C. § 362(b) (2020) contains several exceptions to the automatic stay, none of the exceptions appear to apply here.
[27] *In re Peeples*, 880 F.3d 1207, 1214 (10th Cir. 2018).
[28] 11 U.S.C. § 362(a)(1) (2020).
[29] *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009).
[30] *In re. C.W. Min. Co.*, 477 B.R. 176, 191 (B.A.P. 10th Cir. 2012).
[31] *Id*.
[32] *Id*.

stay are void and of no force or effect, even when there is no actual notice of the existence of the stay."[33]

Plaintiffs contend that an enforceable settlement agreement was reached at the hearing before this Court on January 17, 2025. But at that time, unknown to the Court and to at least Defendants' counsel, Defendant True Value was engaged in bankruptcy proceedings, and the automatic stay had been in force as to True Value since it filed its bankruptcy petition on October 14, 2024.[34] Thus, the hearing and any settlement negotiations made thereat were conducted despite the pendency of True Value's bankruptcy petition. As such, even assuming a settlement agreement was reached between the Parties at the hearing, it was reached in violation of the automatic stay and is, therefore, void.

It seems Plaintiffs may attempt to work around the automatic stay by suggesting that True Value could negotiate and enter the settlement even after its bankruptcy filing because the bankruptcy court has authorized True Value to conduct certain business in the ordinary course.[35] This is unpersuasive. In the bankruptcy context, "ordinary course of business" generally encompasses "ordinary trade credit transactions, and not those outside the normal course of either the debtor's or creditor's business."[36] Many courts have held that payments made pursuant to a settlement agreement are not made in the ordinary course of business,[37] and the present litigation is not in the normal course of business for either True Value or Plaintiffs. Moreover, the

---

[33] *In re Kline*, 472 B.R. 98, 103 (B.A.P. 10th Cir. 2012).
[34] *See* ECF No. 54 at 2.
[35] *See* ECF No. 65, Exs. B–C.
[36] *In re Maloney-Crawford, Inc.*, 144 B.R. 531, 536 (Bankr. N.D. Okla. 1992).
[37] *See id.* ("Prior decisions have held, and I agree, that payments made pursuant to a judgment or settlement agreement are not made in the ordinary course of business . . .") (quoting *In re Richardson*, 94 B.R. 56, 60 (Bankr. E.D. Pa. 1988) (collecting cases)).

bankruptcy court order Plaintiffs point to in support of the argument that, as of November 4, 2024, True Value had been authorized to negotiate a settlement with Plaintiffs suggests, in fact, otherwise.[38] In that order, the bankruptcy court lifted the automatic stay of section 362(a) "to the extent necessary to enable (i) claimants to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and (ii) Insurance Carriers to handle, administer, defend, settle and/or pay workers' compensation claims."[39] The bankruptcy court did not lift—and has not lifted[40]—the stay to allow True Value to settle Plaintiffs' ERISA claims in this Court.

Furthermore, even though Plaintiff only seeks to enforce this alleged agreement against the United Defendants, any agreement purportedly reached between the Parties at the hearing is still void. Generally, the automatic stay "provision does not extend to solvent codefendants of the debtor,"[41] and the United Defendants have not yet asked this Court to extend the stay to them. The present action was thus allowed to continue against the United Defendants after the automatic stay was triggered on October 14, 2024. Nonetheless, the Court cannot ignore the reality that the purported agreement Plaintiffs seek to enforce was between all of the Parties. As Plaintiffs argue, "the plain and unambiguous terms of the settlement agreement demonstrate United, along with True Value and the Plan, did agree to fund it."[42] Thus, this Court cannot hold that an enforceable agreement was reached on January 17, 2025, without potentially obligating True Value's bankruptcy estate in violation of the automatic stay, which remains in place. While

---

[38] *See* ECF No. 65, Ex. C.
[39] *Id.* ¶ 7.
[40] *See, generally, In re True Value Co., LLC*, No. 24-12337-KBO.
[41] *Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994).
[42] ECF No. 65 at 8.

the Court appreciates the complications True Value's bankruptcy presents to Plaintiffs in pursuing their claims, this Court lacks the power to approve and enforce a settlement agreement Plaintiffs and the United Defendants entered with True Value while its bankruptcy petition was pending. Doing so would interfere with the bankruptcy court's jurisdiction over the bankruptcy estate[43] and would deny True Value's creditors the requisite notice of financial obligations True Value agrees to undertake that may impact their claims.

In sum, even assuming a settlement agreement was reached at the January 17, 2025 hearing, this Court cannot hold that an enforceable agreement exists between the Parties as such an agreement was entered in violation of the automatic stay of section 362(a) and is void. The Court therefore denies Plaintiffs' request to enforce the purported settlement agreement against the United Defendants.

## ORDER

For the foregoing reasons, the Court DENIES Plaintiffs' Motion to Enforce Settlement (ECF No. 57).

DATED this 1st day of December, 2025.

_____
ANN MARIE MCIFF ALLEN
United States District Judge

---

[43] To this point, pursuant to Federal Rule of Bankruptcy Procedure 9019, settlements True Value seeks to enter during the pendency of its bankruptcy petition must be approved by the bankruptcy court.